**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| ORO BRC4, LLC, | : |
| | : **Case No. 2:19-cv-04907** |
| Plaintiff, | : |
| | : **CHIEF JUDGE ALGENON L. MARBLEY** |
| v. | : |
| | : **Magistrate Judge Elizabeth Preston Deavers** |
| SILVERTREE APARTMENTS, INC., et al. | : |
| | : |
| | : |
| Defendants. | : |

**OPINION & ORDER**

## I.     INTRODUCTION

This matter is before the Court on the Defendants' Motion to Dismiss Counts Two, Three, Five and Nine of Plaintiff's First Amended Complaint. (ECF No. 55). For the reasons set forth below, the Court **GRANTS** Defendants' motion to dismiss. The Court **DISMISSES WITHOUT PREJUDICE** Counts Three and Nine of Plaintiff's First Amended Complaint. The Court **DISMISSES** Counts Two and Five.

## II.     BACKGROUND

The parties to this action are various business entities connected to a 2018 sale and purchase of multiple apartment complexes located in Ohio. Plaintiff Oro BRC4, LLC ("Oro") filed its nine-count First Amended Complaint ("Amended Complaint") on August 5, 2020, seeking damages and other relief. (ECF No. 52). The Amended Complaint includes, *inter alia*, claims for fraudulent concealment of a latent defect, specifically, "fibrous backing" left and painted over after wallpaper was removed (Count Two); fraudulent concealment of rental discounts or concessions given to persons or entities connected to one or more Defendants (Count Three); fraudulent concealment

of and fraudulent misrepresentation with respect to latent defects in the water supply lines running to apartment buildings (Count Five); and unjust enrichment in the amount of property taxes for a portion of the 2018 tax year (Count Nine). (ECF No. 52). On August 19, Defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) as to Counts Two, Three, Five, and Nine. (ECF No. 55).

### A.  Procedural History

Oro's original complaint was filed on November 7, 2019, (ECF No. 1), and Defendants filed an answer to the complaint on January 7, 2020. (ECF No. 17). On July 6, 2020, Oro sought leave to file an amended complaint, (ECF No. 45), which was granted on July 29. (ECF No. 51).

Defendants filed their motion to dismiss Counts Two, Three, Five, and Nine of the Amended Complaint on August 19. (ECF No. 55). On September 18, Oro filed its response in opposition, (ECF No. 55), and Defendants filed their reply on October 2. (ECF No. 64). Defendants' motion to dismiss is ripe for review.

### B.  Factual History[1]

On or about April 2, 2018, the parties entered into an agreement ("Purchase Agreement") for the purchase and sale of four residential apartment communities (the "Properties"). (ECF No. 52 at 3-4). The Purchase Agreement was subsequently amended on or about April 10, and again on June 5 of that year. (*Id.* at 4-5).

The mechanics of the transaction were fairly sophisticated. Oro Capital Advisors, LLC, instead of Plaintiff Oro itself, was the original buyer under the Purchase Agreement. There were four sellers, including Defendants Silvertree Apartments, Inc.; Springburn Apartments, Inc.; Karric South Apartments, Inc.; and Karric North Apartments, Inc. ("Defendant-Sellers"). Under

---

[1] Except for discussion of the parties' briefs on the motion to dismiss, the relevant factual history detailed here is drawn from Oro's Amended Complaint, treating all well-pleaded factual allegations as true.

the terms of the Purchase Agreement, Defendant-Sellers transferred certain assets, including both the real and personal assets of the Properties, to four newly created "transfer entities," all limited liability companies. (*Id.* at 3-4). Under the terms of the June 5 amendment to the Purchase Agreement, Oro Capital Advisors, LLC "assigned all of its rights and interests in and to the Purchase Agreement" to Oro. (*Id.* at 5). On June 21, one-hundred percent of the interests in the four transfer entities was assigned to Oro. (*Id.*). Thus, Oro came to own the Properties.

Count Two of the Amended Complaint sets forth a claim for damages for fraudulent concealment of latent defects. In or around April 2019, Oro discovered that one or more Defendants had actively concealed a latent defect in some of the units. (*Id.*). Specifically, they had removed old wallpaper but failed to remove the "fibrous backing" in the process, and then they painted over the unremoved backing actively to conceal it. (ECF No. 52 at 5).[2]

Count Three of the Amended Complaint sets forth a claim for damages for fraudulent concealment of rent discounts or concessions given to persons employed by Defendant-Sellers, entities related to Defendant-Sellers, principals or officers of Defendant-Sellers, or some combination of such persons or entities. (ECF No. 52 at 10).

Count Five of the Amended Complaint sets forth a claim for damages for fraudulent concealment and fraudulent misrepresentation of latent defects in the water supply lines running to at least some of the buildings on the Properties. Defendant-Sellers and Defendant Borror Properties Real Estate, LLC ("Borror Properties") made misrepresentations about or failed to disclose issues with the water supply lines. (*Id.* at 7-8). During a meeting at Borror Properties' offices on March 14, 2018, Oro, Defendant-Sellers, and Borror Properties discussed whether there were issues with the plumbing or water supply lines, including whether they were protected from

---

[2] Defendants characterize the fibrous backing as "essentially glue." (ECF No. 55 at 3).

3

the weather. Defendant-Sellers and Borror Realtor affirmatively represented that there were no issues and they were weather-protected. (*Id.* at 7). Oro later learned that Defendant-Sellers had experienced widespread issues with the water supply lines to various buildings at the Properties, such as deteriorated, cracked, or broken lines. (*Id.* at 7-8). Some of the lines were not properly installed, not properly protected from the weather, or both. (*Id.* at 8).

Count Nine sets forth a claim for unjust enrichment. Under the Purchase Agreement, Defendant-Sellers agreed to pay a pro rata share of property taxes for the Properties in the 2018 tax year. (*Id.* at 21). Defendant-Sellers, however, failed or refused to pay their proportionate share. (*Id.* at 25).

In Defendants' motion to dismiss Counts Two, Three, Five, and Nine, Defendants set out the following arguments. On Counts Two and Five, Defendants contend that Oro's claims are barred because: (1) Oro released such claims in the Purchase Agreement; and (2) Oro disclaimed reliance on any extra-contractual representations and warranties such that it cannot establish an essential element of its fraud claims—justifiable reliance. (ECF No. 55 at 7-11). On Count Three, Defendants argue that Oro's claim for fraudulent concealment fails because Oro did not allege a duty on the part of Defendants to disclose any rent concessions. (*Id.* at 11-13). Finally, on Count Nine, Defendants argue for dismissal because: (1) it is undisputed that the Purchase Agreement governs the parties' respective 2018 tax obligations, so a claim for unjust enrichment is precluded by that contract; and (2) Oro failed to allege that it conferred a benefit on Defendants, an essential element of an unjust enrichment claim. (*Id.* at 13-16).

Oro filed a response in opposition, asserting that none of its claims should be dismissed. (ECF No. 62). In response to Defendants' arguments on Counts Two and Five, Oro argues that: (1) the Purchase Agreement's terms do not bar its claims for fraudulent concealment and fraudulent

misrepresentation; and (2) Oro pleaded sufficient facts to establish justifiable reliance. (*Id.* at 3-8). As to the former, Oro essentially contends that any release language in the Purchase Agreement does not encompass fraud claims and amounts to nothing more than an "as is" clause. (*Id.* at 4, 5-6). Additionally, Oro contends that any release or "as is" clause in the Purchase Agreement would not apply to Borror Properties because it was not a party to that Agreement. (*Id.* at 8-9). In response to Defendants' arguments for dismissal of Count Three, Oro argues that Defendants had a duty to disclose rent concessions because they were in a superior position of knowledge and Oro had no other way of obtaining that information. (*Id.* at 9-10). Oro further argues that Count Three should not be dismissed as to Borror Properties, because it had a statutory duty to disclose such concessions. (*Id.* at 10). Finally, Oro argues that Count Nine should not be dismissed because: (1) Federal Rule of Civil Procedure 8(d)(3) permits pleading in the alternative of inconsistent claims of breach of contract and unjust enrichment; and (2) Oro conferred a benefit on Defendants. (*Id.* at 10-12).

Defendants filed a reply, which generally reiterates the arguments made in the motion to dismiss. (ECF No. 64). Defendants reply that, on Counts Two and Five, the Purchase Agreement included a release of liability distinct from the "as is" clause, and that its terms shield also Borror Properties from the claims in those Counts. (*Id.* at 2-4, 7-9). Defendants also argue that, on Count Three, the parties did not stand in a fiduciary or similar relationship of trust and confidence that would give rise to a duty to disclose its relationship to those receiving rent concessions. (*Id.* at 9-10). Finally, as to Count Nine, Defendants argue in reply that: (1) because there is no dispute that the Purchase Agreement governs the parties' respective property tax obligations for the 2018 tax year, Oro cannot plead unjust enrichment in the alternative; and (2) Oro fails to allege any benefit conferred on Defendants. (*Id.* at 10-12).

### III.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for a failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, "the plaintiff must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level and to state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although the court "must accept all well-pleaded factual allegations in the complaint as true," the court "need not accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted). In short, the plaintiff's complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

When interpreting questions of state law, a "federal court must apply state law in accordance with the controlling decisions of the highest court of the state." *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Where the "highest court has not addressed the issue, the federal court must attempt to ascertain how that court would rule if it were faced with the issue,]" using "the decisional law of the state's lower courts, other federal courts construing state law, restatements of law, law review commentaries, and other jurisdictions on the 'majority' rule in making this determination." *Id.* (citing *Grantham & Mann v. American Safety Prods.*, 831 F.2d 596, 608 (6th Cir. 1987)). At the same time, a "federal court should not disregard the decisions of intermediate appellate state courts

unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* (citing *Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967)).

## IV.    ANALYSIS

Defendants move to dismiss Counts Two, Three, Five, and Nine of the Amended Complaint for a failure to state a claim upon which relief can be granted. Following discussion of a preliminary issue, the Court addresses Counts Two and Five together, which both concern latent defects and which the parties' briefs argued in conjunction, before turning to Counts Three and Nine separately.

### A.    Consideration of the Purchase Agreement

As a preliminary issue, the Court must determine whether its consideration of the Purchase Agreement as attached to Defendants' motion to dismiss would convert that motion to one for summary judgment.

The general rule is that a motion to dismiss made under Rule 12(b)(6) must be treated as one for summary judgment where it presents matters outside the pleadings and not excluded by the court. FED. R. CIV. P. 12(d). Such a motion is not converted, however, where the court considers documents incorporated into the complaint by reference. *Bowers v. Wynne*, 615 F.3d 455, 470 (6th Cir. 2010). Similarly, a court may consider exhibits attached to a Rule 12(b)(6) motion to dismiss "so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

Here, Oro did not attach the Purchase Agreement as an exhibit to its Amended Complaint. Instead, it stated that it was not required to attach a copy and, even if it were so required, it could not do so without violating the requirements to keep the Purchase Agreement's terms confidential.

(ECF No. 52 at 4). Defendants, however, attached portions of the Purchase Agreement as an exhibit to their motion to dismiss. (ECF No. 55-1). They argue the Court may consider the exhibit because it was incorporated by reference into the Amended Complaint. (ECF No. 55 at 2, n.1). Oro did not raise the issue of whether the Court's consideration of the Purchase Agreement would require conversion pursuant to Rule 12(d), nor did it contest the authenticity of Defendants' exhibit. In fact, Oro attached portions of the Purchase Agreement to its response in opposition to the motion to dismiss. (ECF No. 62-1).

While Oro may have attempted formally to incorporate by reference the Purchase Agreement, it is difficult to discern language to that effect in the Amended Complaint. At the very least, however, the Purchase Agreement is referenced in and central to the Amended Complaint. The Amended Complaint makes repeated and specific references to the Purchase Agreement and its terms. Indeed, Oro's claims are founded on alleged breaches of and issues surrounding the transaction provided for by the Purchase Agreement. Thus, the Court may consider the portions of the Purchase Agreement attached to the motion to dismiss without converting the motion to one for summary judgment.

**B. Fraud with Respect to "Fibrous Backing" (Count Two) and Water Supply Lines (Count Five)**

Defendants contend that Oro's claims in Counts Two and Five fail as matter of law for two independents reasons. First, Defendants argue, Oro waived and released its fraudulent concealment and fraudulent misrepresentation claims in Counts Two and Five by the express terms of the Purchase Agreement. (ECF No. 55 at 7). Second, they argue that even if Oro did not fully release such claims, the language of the Purchase Agreement precludes Oro from establishing justifiable

reliance. (*Id.* at 8). Because the Court finds that Oro waived and released its claims in Counts Two and Five, the Court does not address the latter argument.

Under Ohio law, actual fraud has six elements: (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. *Burr v. Stark Cty. Bd. of Comm'rs*, 23 Ohio St.3d 69, 73, 491 N.E.2d 1101 (1986) (citations omitted); *see also Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 55, N.E.2d 709 (1987) (citations omitted); *Koyo Corp. of U.S.A. v. Comerica Bank*, No. 1:10 CV 2557, 2011 WL 4540957, at *6 (N.D. Ohio Sep. 29, 2011) (citing *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167, 169, 462 N.E.2d 407 (1984)). In the context of a sale of real property, an "as is" clause bars a claim for nondisclosure, but it does not bar a claim for fraudulent concealment or fraudulent misrepresentation. *Brewer v. Brothers*, 82 Ohio App.3d 148, 151, 611 N.E.2d 492 (12th Dist. 1992) (citations omitted).

Here, Defendants argue that the parties' real estate contract contains not only an "as is" clause, but also a release and waiver by Oro of any and all claims—including those for fraudulent misrepresentation and concealment—for latent defects against Defendants, other than those claims resulting in breach of express representations or warranties that survived closing. (ECF No. 55 at 8). Defendants conclude that Oro's claims for fraudulent misrepresentation and concealment set forth in Counts Two and Five are barred as a matter of law by the release contained in the Purchase Agreement. (*Id.*)

Oro responds that Ohio law does not support Defendants' argument that the "as is" clause here cannot be overcome by affirmative fraud simply because it contains "some release and/or integration language[.]" (ECF No. 62 at 4). Oro contends there are three flaws in Defendants' argument: (1) it is at least ambiguous whether the Purchase Agreement releases Defendants from claims for fraudulent misrepresentation or concealment; (2) the release in the Purchase Agreement does not apply to Borror Properties, which was not a party or signatory to the Purchase Agreement and not designated as an agent therein; and (3) Ohio case law shows that similar "as is" clauses containing "substantially similar release and/or integration" language do not preclude as a matter of law claims for fraudulent misrepresentation or concealment. (*Id.* at 4).

The parties' arguments present two primary issues. First, whether the release and waiver terms of the Purchase Agreement encompass Oro's claims in Counts Two and Five. And second, whether such terms bar as a matter of law Oro's claims as to Borror Properties. The Court addresses each in turn.

At issue is whether the Purchase Agreement's express release and waiver terms are broad enough to encompass Oro's claims for fraudulent misrepresentation and fraudulent concealment set forth in Counts Two and Five.

Ohio law provides that "[a] release is an absolute bar to a later action on any claim encompassed within it, absent a showing of fraud, duress, or other wrongful conduct in procuring it." *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, 97 N.E.3d 458, ¶ 48 (citations omitted). A release of liability is "a binding agreement between the parties under which at least one party to an agreement relinquishes an existing claim or cause of action against another party" to the agreement. *Id.* at ¶ 55 (citing 29 Lord, *Williston on Contracts*, Section 73:1, at 8 (4th ed. 2003)). Whether a liability is encompassed within a release "depends entirely upon the

intention of the parties, which is to be gathered from the language of the release and the state of facts then existing." *Task v. Nat'l City Bank*, 8th Dist. Cuyahoga No. 65617, 1994 WL 43883, at *4 (Feb. 10, 1994) (citations omitted). If the parties "intend to leave some things out of a release, then 'their intent [so to do] should be made manifest.'" *Id.* (quoting *United States v. William Cramp & Sons Ship & Engine Bldg. Co.*, 206 U.S. 118, 128 (1907)). Indeed, "where the terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (1978). In the absence of "fraud or mutual mistake, broadly-worded releases are generally construed to include all prior conduct between the parties, even if the scope of such conduct or its damages is unknown to the releasor." *Denlinger v. City of Columbus*, 10th Dist. Franklin No. 00AP-315, 2000 WL 1803923, at *5 (Dec. 7, 2000) (citations omitted).

Here, the Purchase Agreement included an "as is" clause, as well as an agreement that Oro would not rely on any representations or warranties other than those contained within the Purchase Agreement. Such terms are found in Section 9.2 of the Agreement, which were in uppercase and bold typeface (omitted below), and which read in pertinent part as follows:

> 9.2    Disclaimers.   Except for the express representations and warranties of Seller set forth in this Agreement and in the closing documents, Purchaser understands and agrees that Seller is not making and has not at any time made any warranties or representations of any kind or character, expressed or implied, with respect to the property, including, but not limited to, any warranties or representations as to . . . latent or patent physical . . . conditions, . . . or any other matter or thing regarding the property. Purchaser acknowledges and agrees that upon closing Seller shall sell and convey to Purchaser and Purchaser shall accept the property "as is, where is, with all faults" . . . Purchaser has not relied and will not rely on, and Seller is not liable for or bound by, any expressed or implied warranties, guaranties, statements, representations or information pertaining to the property or relating thereto . . . made or furnished by Seller, the manager of the property, or any real estate broker or agent representing or purporting to represent seller . . . unless specifically set forth in this agreement or in the closing documents.

(ECF No. 55-1 at 19).

More important than the above terms, however, is the release language included in the very next paragraph:

> Purchaser represents to Seller that Purchaser has conducted, or will conduct prior to closing, such investigations of the property, including but not limited to, the physical . . . conditions thereof, as Purchaser deems necessary to satisfy itself as to the condition of the property . . . . Upon Closing, Purchaser shall assume the risk that adverse matters, including but not limited to, . . . adverse physical . . . conditions, . . . may not have been revealed by Purchaser's investigations, and Purchaser, upon Closing, shall be deemed to have waived, relinquished and released Seller (and Seller's and its partners' respective members, officers, directors, shareholders, employees and agents) from and against any and all claims, demands, causes of action (including causes of action in tort . . . ), losses, damages, liabilities, fines, penalties . . . , costs and expenses . . . of any and every kind or character, known or unknown, which Purchaser might have asserted or alleged against Seller (and Seller's and its partners' respective members, officers, directors, shareholders, employees and agents) at any time by reason of or arising out of any latent or patent construction defects or physical conditions, . . . and any and all other acts, omissions, events, circumstances or matters regarding the property. The foregoing shall not be interpreted to waive any claim of purchaser with respect to any breach by Seller of any express representation and warranty made by Seller in this Agreement that expressly survives closing pursuant to the terms hereof.

(ECF No. 55-1 at 20-21).

The above-quoted language unambiguously shows an intent to release "any and all" claims and causes of action "of any and every kind or character, known or unknown," which could have been brought against Defendant-Sellers or their agents "at any time by reason of or arising out any latent . . . defects or physical conditions . . . and any and all other acts, omissions, events, circumstances, or matters regarding the property." Despite Oro's contention to the contrary, (ECF No. 62 at 4), there is no ambiguity as to whether the release language encompasses claims for fraudulent concealment and fraudulent misrepresentation that took place prior to closing. To read into so broadly worded terms an intent to leave out such fraud claims would be to "create a new contract by finding an intent not expressed in the clear language employed by the parties."

12

*Alexander*, 53 Ohio St.2d at 246. Indeed, the release is so broadly worded that it is properly "construed to include all prior conduct between the parties, even if the scope of such conduct or its damages is unknown to the releasor." *Denlinger*, 2000 WL 1803923, at *5.

There are no other facts alleged here that would suggest one or both parties did not intend the release to be as broad as the clear and unambiguous language to which they agreed is. By all appearances, these were relatively sophisticated parties engaged in an arm's length business transaction for the sale and purchase of commercial real estate. In Section 9.2, Oro represented and warranted that it had read, understood, and consulted with legal counsel of its choosing with regard to the terms of the release. (ECF No. 55-1 at 21). Oro does not allege that the release was procured by fraud, duress, or other wrongful conduct. There is simply no reason to second guess the clear and unambiguous terms of the Purchase Agreement in this instance.

Oro argues, albeit unsuccessfully, that Ohio courts refuse to dismiss claims for fraudulent concealment or fraudulent misrepresentation even when an "as is" clause is "augmented" with additional terms as here. (ECF No. 62 at 5-6). In support of that argument, Oro cites *Mancini v. Gorick*, 41 Ohio App.3d 373, 536 N.E.2d 8 (9th Dist. 1987). Oro contends that the "as is" clause in that case was "substantially similar" to the one here. (ECF No. 62 at 6). As Oro points out, the "as is" clause in *Mancini* provided for the buyer's right to inspect, stated that the buyer was not relying on any representations of the seller, and contained an integration clause. *Mancini*, 41 Ohio App.3d at 374. Such terms are certainly similar to those found in the Purchase Agreement here. Oro is mistaken, however, in its assertion that the *Mancini* purchase agreement also contained a release from buyer to seller releasing *seller* from liability. (ECF No. 62 at 6). The *Mancini* agreement released only the realtors in that case from liability for acts or omissions of the buyer or seller: "It is mutually agreed that Realtor and Co-Realtor shall not be held liable for any defaults

13

arising from any acts or omissions by or upon the part of seller or buyer." *Mancini*, 41 Ohio App.3d at 374. Significantly, the release terms of the purchase agreement in that case do not remotely approach the terms presented in the parties' Purchase Agreement here.

Oro makes two additional arguments as to why the Purchase Agreement does not release Defendants from claims for fraudulent misrepresentation or concealment, both unavailing. First, Oro argues its right of inspection as provided for in the Purchase Agreement implies that Defendants would not interfere with his ability to inspect the properties. (ECF No. 62 at 4). Even assuming, *arguendo*, there was an implied right to be free of any interference in its inspection, the Amended Complaint contains no allegations that its inspections were impeded or its right of inspection otherwise compromised. Second, Oro argues that Defendants "had a separate independent duty . . . not to tortuously interfere with Plaintiff's ability to inspect the Properties by actively concealing" defects. (ECF No. 62 at 4-5). Oro fails to identify the source of such duty and to explain why the release would be rendered inoperative.

Thus, as to Defendant-Sellers, the release included in the Purchase Agreement encompasses Oro's claims for fraudulent misrepresentation and fraudulent concealment of latent defects set forth in Counts Two and Five.

The release contained in the Purchase Agreement similarly bars Oro's claims in Counts Two and Five with respect to Borror Properties. At issue is whether Borror Properties is an agent of Defendant-Sellers under the Purchase Agreement.

The release contained in the Purchase Agreement applies not only to Defendant-Sellers, but to their and their "partners' respective members, officers, directors, shareholders, employees and agents . . . ." (ECF No. 55-1 at 20). Here, Oro alleges in its Amended Complaint that Defendant-Sellers:

14

> fail[ed] to disclose and misrepresent[ed] (i) that [Defendant-Sellers] had in fact
> worked with a real estate broker other than ARA Newmark, . . . and (ii) that [Borror
> Properties] did in fact receive a commission from the sale contemplated by the
> Purchase Agreement in direct contravention of [Defendant-Sellers'] representation
> in the Purchase Agreement that no other real estate brokers/agents were entitled to
> a commission other than ARA Newmark . . . .

(ECF No. 52 at 11-12). It is clear Oro was referring to Borror Properties in the foregoing language.

Oro also alleges that Borror Properties is an Ohio-licensed real estate broker or agent and "actively

participated in the sale contemplated by the Purchase Agreement." (*Id.* at 19). Further, Oro alleges

that Borror Properties received "a commission in the amount of $300,000 relating to said sale."

(*Id.* at 20). Oro thus depicts Borror Properties as a real estate broker that worked with Defendant-

Sellers in this transaction and was paid a sizeable commission in return. Moreover, Oro alleges

that the March 14 meeting during which the parties discussed the water supply lines was held at

Borror Properties' office, and Borror Properties' joined Defendant-Sellers in making

representations as to the condition of the lines. Such allegations are inconsistent with the view that

Borror Properties was not acting as Defendant-Seller's agent. Thus, the release contained in the

Purchase Agreement bars Oro's claims in Counts Two and Five with respect to Borror Properties.

   For foregoing reasons, Counts Two and Five are is **DISMISSED** as to both Defendant-

Sellers and Borror Properties.

### C.    Fraudulent Concealment of Rent Discounts (Count Three)

   Dismissal of Oro's claim in Count Three for damages resulting from fraudulent

concealment of Rent Discounts is proper.

   As stated above, actual fraud has six elements under Ohio law: (1) a representation or,

where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at

hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness

as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading

another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. *Burr v. Stark Cty. Bd. of Comm'rs*, 23 Ohio St.3d 69, 73, 491 N.E.2d 1101 (1986) (citations omitted).

Accordingly, a claim for fraudulent concealment must allege an underlying duty to disclose. *Allen v. Anderson Windows, Inc.*, 913 F. Supp. 2d 490, 514 (S.D. Ohio 2012) (citing *Spears v. Chrysler, LLC*, No. 3:08-cv-331, 2011 WL 540284, at *9 (S.D. Ohio Feb. 8, 2011)); *see also Fed. Mgmt. Co. v. Coopers & Lybrand*, 137 Ohio App.3d 366, 383, 738 N.E.2D 842 (10th Dist. 2000) ("[A] duty to disclose is a requirement if concealment of fact is alleged as a basis for fraud."). Where a plaintiff fails to allege a duty to disclose, dismissal under Rule 12(b)(6) of a fraudulent concealment claim is proper. *Allen*, 914 F. Supp. 2d at 514 (citations omitted).

In general, "where a contract exists between two parties, a breach of that contract does not create a tort claim." *Verizon Advanced Data, Inc. v. FrogNet, Inc.*, No. 2:05-cv-955, 2010 WL 143325, at *13 (S.D. Ohio Apr. 2, 2010). Rather, "[t]he tort liability of parties to a contract arises from the breach of some positive legal duty imposed by law because of the relationship of the parties, rather than from a mere omission to perform a contract obligation." *Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111, 117 (6th Cir. 1976) (citing *Bowman v. Goldsmith Bros. Co.*, 63 Ohio Law Abs. 428, 109 N.E.2d 556 (8th Dist. 1953)); *see also Textron Fin. Corp v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 151, 684 N.E.2d 1261 (9th Dist. 1996) ("A tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed.") (citing *Battista*, 538 F.2d at 117).

In the fraudulent concealment context, "a duty to disclose arises primarily in a situation involving a fiduciary duty or other similar relationship of trust and confidence." *Fed. Mgt. Co. v. Coopers & Lybrand*, 137 Ohio App.3d 366, 384, 738 N.E.2d 842 (10th Dist. 2000). Thus, a fiduciary relationship is not always required, and a duty to disclose "may arise in any situation where one party imposes confidence in the other because of that person's position, and the other party knows of this confidence." *Cent. States Stamping Co. v. Terminal Equip. Co., Inc.*, 727 F.2d 1405, 1409 (6th Cir. 1984) (citing *Smith v. Patterson*, 33 Ohio St.70, 75-76 (1877)). Where parties deal at arm's length in a business transaction, "each party is ordinarily 'presumed to have the opportunity to ascertain relevant facts available to others similarly situated and, therefore, neither party has a duty to disclose material information to the other[.]'" *Auto Chem Labs., Inc. v. Turtle Wax, Inc.*, No. 3:07cv156, 2008 WL 4372697, at *14 (S.D. Ohio Sep. 23, 2008) (quoting *Blon v. Bank One, Akron, N.A.*, 35 Ohio St.3d 98, 101, 519 N.E.2d 363 (1988)). Full disclosure may be required, however, "'where such disclosure is necessary to dispel misleading impressions that are or might have been created by partial revelation of the facts.'" *Id.* (quoting *Blon*, 35 Ohio St.3d at 101) (citations omitted).

In the instant matter, Oro alleges that Defendants "actively concealed and/or failed to disclose improper and unreasonable rental discounts that Seller" gave "to persons who were employed by Seller and/or entities related to Seller and/or Seller's principals or officers." (ECF No. 52 at 10).

Defendants argue for dismissal of Count Three on the grounds that Oro fails to allege a duty on the part of Defendants to disclose any rent concessions. (ECF No. 55 at 11-13). According to Defendants, Oro must allege a legal duty to disclose independent of any such duty imposed by the parties' contract. (*Id.* at 11). Since any duty to disclose rent concessions would arise only under

the Purchase Agreement, which imposed upon Defendants an obligation to make rent rolls with concessions available to Oro, Defendants assert that Oro has not and cannot allege an independent duty. (*Id.* at 13).

In response, Oro contends that because Defendants were in a "position of superior knowledge" with respect to rent concessions and Oro could not discover such information, Defendants had a duty to disclose it. (ECF No. 62 at 10). While not altogether clear, Oro appears to base that contention on the theory that a duty to speak arose in this situation since Oro reposed confidence in Defendants because of their position, and Defendants knew of this confidence. *See* (ECF No. 62 at 10). Additionally, Oro argues that its claim of fraudulent concealment of rent concessions as to Borror Properties should remain because Borror Properties had an independent statutory duty of disclosure. (ECF No. 62 at 10). As best as the Court can tell, Oro locates that statutory duty under section 4735.67 of the Ohio Revised Code. *See* (ECF No. 62 at 10).

The Court concludes Oro has failed to state a claim for fraudulent concealment in Count Three. Oro does not allege plausibly that Defendants fraudulently concealed rent concessions. As stated above, "the plaintiff must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level and to state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)) (internal quotations omitted). Although the court "must accept all well-pleaded factual allegations in the complaint as true," it "need not accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted). Here, Count Three contains legal conclusions couched as factual allegations with respect to each of the elements of a fraudulent concealment claim, with the possible exception

of its allegation that the concealment was material. (ECF No. 52 at 13-14). Count Three addresses

each element as follows:

> 50.     Plaintiff restates the allegations set forth in the preceding paragraphs as if
> fully rewritten here.
> 51.     One or more of the Defendants actually concealed the Rent Discounts from
> Plaintiff.
> 52.     The active concealment of the Rent Discounts from Plaintiff is material
> because it reduced the total revenue and profit of the Properties.
> 53.     One or more of the Defendants knew or should have reasonably known of
> the concealment of the Rent Discounts.
> 54.     One or more of the Defendants concealed the Rent Discounts with the intent
> of misleading Plaintiff and/or Original Purchaser.
> 55.     Plaintiff and/or Original Purchaser justifiably relied upon one or more of
> the Defendants regarding the non-existence of the Rent Discounts.
> 56.     As a direct and proximate result of one or more of the Defendants'
> fraudulent concealment of the Rent Discounts, Plaintiff has suffered damages . . . .

(ECF No. 52 at 13-14). From these conclusory allegations, the Court cannot draw the reasonable

inference that Defendants may be liable for fraudulent concealment of rent concessions. The

general allegations elsewhere in the Amended Complaint that Defendants concealed rent

concessions to persons or entities connected to one or more Defendants, (ECF No. 52 at 10), are

similarly insufficient to raise Oro's right to relief on Count Three above the speculative level.

Even, for the sake of argument, setting aside the above issue, Oro has failed to allege a

duty to disclose the rent concessions on the part of Defendants. With respect to Defendants other

than Borror Properties, the Amended Complaint suggests no reason to believe there was such a

duty to disclose except for the obligations to do so under the terms of parties' contract. The

Purchase Agreement required Defendants to disclose rent concessions, and mere breach on that

front would not create a tort claim. Thus, Oro must allege that Defendants breached some separate

duty to disclose.

Oro construes this case as a situation where it reposed confidence in Defendants because

of their "position of superior knowledge" concerning the rent concessions and its own inability to

discover that information. The Amended Complaint, however, contains no allegations suggesting Oro reposed such confidence in Defendants, that Oro was unable to discover that information, or that Defendants knew of such confidence. Such contentions can be found only in Oro's response in opposition.

Even if the Court were to read the Amended Complaint in conjunction with Oro's response in opposition, that would lead to the conclusion that what Oro claims Defendants fraudulently concealed was not the rent concessions themselves, but rather information on "whether an individual identified in the rent roll was an employee of Sellers and/or an employee of a company affiliated with Sellers." (ECF No. 62 at 9). Oro has cited no relevant authority, and the Court has found none, for the proposition that a seller of real estate has a legal duty to disclose its relationship to those receiving rent concessions.

Perhaps Oro is of the belief that full disclosure of both rent concessions and Defendants' relationship to those receiving them is "necessary to dispel misleading impressions that are or might have been created by partial revelation of the facts.'" *Auto Chem Labs., Inc. v. Turtle Wax, Inc.*, No. 3:07cv156, 2008 WL 4372697, at *14 (S.D. Ohio Sep. 23, 2008) (quoting *Blon*, 35 Ohio St.3d at 101) (citations omitted). But the Amended Complaint contains no allegations supporting the conclusion that any rent concessions Defendants actually disclosed created a misleading impression in the absence of further disclosures regarding the recipients' relationship to Defendants. Oro does not allege that Defendants disclosed some concessions but not others, nor does it allege that the concessions disclosed were inaccurate. Oro has alleged no facts allowing the Court to infer that it was left with a misleading impression simply because it had no way to know which rent concessions were given to persons or entities connected to Defendants. In sum, as to

Defendant-Sellers, Oro has failed to allege a duty to disclose, and dismissal under Rule 12(b)(6) of Count Three is proper. *See Allen*, 914 F. Supp. 2d at 514 (citations omitted).

With respect to Borror Properties, Oro argues that they were not a party to the Purchase Agreement and had a separate statutory duty to disclose the rent concessions. The only statute Oro has directed this Court to, however, does not appear to impose such a duty. Section 4735.67(A) of the Ohio Revised Code requires covered real estate brokers to "disclose to any purchaser all material facts of which the [broker] has actual knowledge pertaining to the physical condition of the property that the purchaser would not discover by a reasonably diligent inspection, including material defects in the property, environmental contamination, and information that any statute or rule requires be disclosed." OHIO REV. CODE ANN. § 4735.67(A) (West). Oro has cited no authority, and the Court has found none, interpreting that statute as imposing a duty to disclose rent concessions or construing them as a "physical condition" for purposes of § 4735.67(A). Oro has pointed to no other legal or statutory duty imposing on Borror Properties a duty to disclose. Thus, as to Borror Properties, Oro has failed to allege a duty to disclose the rent concessions, and dismissal under Rule 12(b)(6) of Count Three is proper. *See Allen*, 914 F. Supp. 2d at 514 (citations omitted).

For the foregoing reasons, the Court **DISMISSES WITHOUT PREJUDICE** Count Three of the Amended Complaint for failure to state a claim.

### D.      Unjust Enrichment (Count Nine)

The Court concludes that Oro's claim for unjust enrichment due to Defendants' ownership or use of the Properties during part of 2018 without paying a proportionate share of property taxes should be dismissed.

Under Ohio law, unjust enrichment has three elements: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment . . . ." *Hambleton v. R.G. Barry Corp*, 12 Ohio St.3d 179, 183, N.E.2d 1298 (1984) (internal quotation marks omitted). Recovery under a theory of unjust enrichment compensates the plaintiff for a benefit conferred upon another, not for a loss the plaintiff has suffered. *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 799 (6th. Cir. 2009) (citation omitted). It is "'an equitable doctrine to justify a quasi-contractual remedy that operates *in the absence of an express contract or a contract implied in fact* to prevent a party from obtaining money or benefits that in justice and equity belong to another.'" *Id.* (quoting *Beatley v. Beatley*, 160 Ohio App.3d 600, 2005-Ohio-1846, 828 N.E.2d 180, 192-93 (10th Dist.)). The law in Ohio "'is clear that a plaintiff may not recover under the theory of unjust enrichment or quasi-contract when an express contract covers the same subject.'" *Id.* (quoting *Lehmkuhl v. ECR Corp.*, 5th Dist. Knox No. 06 CA 039, 2008-Ohio-6295). Indeed, even at the motion to dismiss stage, if the existence of an express contract that governs the same subject matter as an unjust enrichment claim "is not in dispute, courts routinely dismiss unjust enrichment claims as precluded by the contract." *AP Alts., LLC v. Rosendin Elec., Inc.*, No 5:18-CV-01748, 2020 WL 2526957, at *6 (N.D. Ohio May 18, 2020) (citations omitted).

Here, it is undisputed that an express written contract—the Purchase Agreement—governs the same subject matter as Oro's unjust enrichment claim. Count Nine of the Amended Complaint states that Defendants were unjustly enriched because they "benefitted from the ownership and/or use of the Properties during a portion of 2018 without paying their proportionate share of the property taxes for the 2018 tax year." (ECF No. 52 at 25). At the same time, the Amended Complaint states that, by the terms of the Purchase Agreement, Defendants were required to pay

to Oro their: (1) pro rata share of taxes for the Properties for the 2018 tax year through the date of closing; plus (2) pro rata share of any tax increases for the Properties that year. (ECF No. 52 at 21). Indeed, the Amended Complaint includes claims for a declaratory judgment ordering Defendants to pay their proportionate share under the terms of the Purchase Agreement and for breach of contract due to Defendants' failure to pay in accordance with such terms (Counts Seven and Eight, respectively). (ECF No. 52 at 21-25). Thus, according to the Amended Complaint, the Purchase Agreement governs the parties' respective 2018 property tax obligations.[3] Meanwhile, Defendants concede "that the Purchase Agreement, as amended, is a valid contract and governs the relationship between the parties." (ECF No. 55 at 14). That a valid and enforceable express written contract governs the subject matter of Oro's unjust enrichment claim is therefore not in dispute. Accordingly, the Court concludes that Oro's unjust enrichment claim should be dismissed as precluded by the contract.

Oro's argument that it is entitled to plead breach of contract and unjust enrichment in the alternative is unavailing. It is true that in federal court "[a] party may state as many separate claims or defenses as it has, regardless of consistency." FED. R. CIV. P. 8(d)(3). Indeed, even "[a] claim for unjust enrichment may be pled in the alternative . . . when the existence of an express contract is in dispute and may be maintained despite the existence of an express contract where there is evidence of fraud, bad faith, or illegality." *Gascho v. Glob. Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 699 (S.D. Ohio 2012). But "[a]ny fraud or bad faith that negates the operation of this rule must occur in the formation of the contract." *R.J. Wildner Contracting Co., Inc. v. Ohio Tpk. Comm'n*, 913 F. Supp. 1031, 1043 (N.D. Ohio 1996) (citing *Eyerman v. Mary Kay Cosmetics*, 967 F.2d 213, 222 (6th Cir. 1992)). Here, Oro alleges no fraud, bad faith, or illegality with respect to

---

[3] The Purchase Agreement attached to Defendants' motion to dismiss also suggests as much. *See* (ECF No. 55-1 at 17).

any of the Purchase Agreement's terms governing the parties' respective tax obligations for the 2018 tax year. To the contrary, it seeks enforcement of such terms in Counts Seven and Eight. And Defendants concede that the Purchase Agreement governs such subject matter. Moreover, although Oro alleges fraudulent concealment and fraudulent misrepresentation as to latent defects and rent concessions, it does not challenge the validity of the Purchase Agreement in general. Because any allegations of fraud or bad faith Oro may be making here are not directed at the tax-related provisions of the Purchase Agreement and there is no dispute that the Agreement governs the same subject matter as Oro's unjust enrichment claim, Oro's argument that it may plead unjust enrichment in the alternative "goes against the weight of authority finding that dismissal is warranted even at the motion to dismiss stage when the existence of the contract is not in dispute." *AP Alts., LLC v. Rosendin Elec., Inc.*, No 5:18-CV-01748, 2020 WL 2526957, at *6 (N.D. Ohio May 18, 2020). That Oro may generally plead inconsistent claims gives way in this instance.

The conclusion that dismissal of Count Nine is proper is also supported by the fact that the Amended Complaint fails to allege plausibly that Oro conferred a benefit on Defendants with respect to the 2018 property taxes. As stated above, an element of any unjust enrichment claim in Ohio is that a plaintiff has conferred a benefit on a defendant. *Hambleton*, 12 Ohio St.3d at 183. Here, Oro argues that its payment of Defendants' share of 2018 real estate taxes to the relevant government agencies conferred a benefit. (ECF No. 62 at 12). Oro, however, fails to plead factual content from which the Court could reasonably infer that Oro ever made such a payment. The Amended Complaint alleges that certain taxes were owed for the 2018 tax year, that the parties were responsible for paying their proportionate shares, that Defendants failed to pay their share, and that "[a]s a direct and proximate result . . . Plaintiff has suffered damages . . . ." (ECF No. 52 at 21-24). While Oro's response in opposition contends that its "overpayment" to the relevant

government agencies conferred a benefit, the Amended Complaint itself simply fails to allege that Oro actually paid Defendants' proportionate share of taxes for the 2018 tax year.

The only other benefit Oro suggests in its response in opposition is that Defendants "benefitted from the ownership and use of the applicable properties during the time period for which Plaintiff paid the real estate taxes." (ECF No. 62 at 12). As best as the Court can tell, Oro construes Defendants' ownership and use of the Properties prior to closing (i.e. during the period of Defendants' ownership before they sold to Oro) as a benefit somehow conferred by Oro on Defendants. Oro cites no authority for the proposition that a seller's ownership and use of its property before sale to a buyer may constitute a benefit conferred upon that seller by the buyer. Thus, Oro has failed to allege an element of unjust enrichment, and dismissal is proper.

Having concluded that Oro has failed to state a claim for unjust enrichment, the Court **DISMISSES WITHOUT PREJUDICE** Count Nine of the Amended Complaint**.**

<h3 style="text-align:center">V.     CONCLUSION</h3>

For the reasons stated herein, the Court **GRANTS** Defendants' Motion to Dismiss. (ECF No. 55). Counts Three and Nine are **DISMISSED WITHOUT PREJUDICE**, and Counts Two and Five are **DISMISSED**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: January 19, 2021**