**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

ORO BRC4, LLC,

      **Plaintiff,**

                                  **Civil Action 2:19-cv-4907**

      **v.**                          **Chief Judge Algenon L. Marbley**

                                  **Magistrate Judge Elizabeth P. Deavers**

SILVERTREE APARTMENTS, *et al.*,

      **Defendants.**

---

ORO CAPITAL ADVISORS, LLC, *et al.*,

      **Plaintiffs,**

                                  **Civil Action 2:19-cv-5087**

      **v.**                          **Chief Judge Algenon L. Marbley**

                                  **Magistrate Judge Elizabeth P. Deavers**

BORROR CONSTRUCTION CO.,
LLC, *et al.*,

      **Defendants.**

## <u>OPINION AND ORDER</u>

This matter is before the Court for consideration of Plaintiffs' Motion for Sanctions for

Defendants' Failure to Prepare Witness for 30(B)(6) Deposition, Failure to Disclose

Discoverable Information, and Failure to Preserve Evidence (Case No. 2:19-cv-4907 (the

"Purchase Agreement Case"), ECF No. 78; Case No. 2:19-cv-5087 (the "Federal Construction

Case"), ECF No. 109), a Motion jointly filed by Plaintiffs in the above related cases.[1]  This

---

[1] The Court will enter this Opinion and Order in each case.  Unless noted otherwise, the Court
will cite to documents only as they appear on the Federal Construction Case docket.

Motion has been fully briefed and is ripe for decision.  For the reasons stated herein, the Motion is **GRANTED IN PART AND DENIED IN PART**.

## I.

This Motion arises out of Plaintiffs' Rule 30(b)(6) deposition of Matthew C. Cook, the corporate representative of Defendant Borror Construction Co., LLC,[2] which took place on January 15, 2021.  (*See* ECF No. 109-2.)  On December 31, 2020, Oro served Borror with a Civ. R. 30(b)(6) Notice of Deposition of Defendant, Borror Construction Co., LLC, noticing a deposition for January 15, 2021.  (ECF No. 109-1 (the "Notice of Deposition").)  Attached to the Notice of Deposition was a list of thirty-seven (37) topics to be covered during the deposition (the "Topics").  (*Id.* at PAGEID ## 2596-2599.)  On January 4, 2021, Borror responded to Oro through counsel and advised that Borror did not agree to all of the Topics, but offered "to work out the appropriate scope for the deposition without Court intervention."  (*See* ECF No. 114-6 at PAGEID # 2993.)  The parties attempted to reach agreement on the deposition Topics, and after briefly discussing the issue with the Court, Oro offered to remove Topic No. 6 and to limit the scope of Topic Nos. 22 and 23.  (*Id.* at PAGEID ## 2987-2990.)  Borror accepted the withdrawal of Topic No. 6 and objected on various grounds to twelve (12) of the remaining thirty-six (36) Topics.  (*Id.* at PAGEID # 2987.)

On January 15, 2021, Mr. Cook, the head of Borror's IT's department, appeared as Borror's corporate representative deponent.  (*See* ECF No. 109-2.)  Over the course of the deposition, Mr. Cook testified to the following:

- Mr. Cook only received the Notice of Deposition on January 12, 2021, less than seventy-two (72) hours before his deposition (*id.* at PAGEID ## 2661-2662);

---

[2] For ease of reference, the Court will collectively refer to all Plaintiffs as "Oro," and all Defendants as "Borror."

- In preparation for the deposition, Mr. Cook did not review any documents from Borror other than his own emails, which he did to "refresh [his] knowledge" (*id.* at PAGEID ## 2602, 2662); and

- In preparation for the deposition, Mr. Cook spoke to counsel but did not speak to or interview any current or former employees at Borror regarding any of the Topics (*id.* at PAGEID ## 2602-2604, 2616, 2625, 2634-2635, 2661-2662, 2666-2667, 2669).

During the deposition, Mr. Cook also repeatedly demonstrated a clear lack of understanding of

his role as a corporate representative testifying on behalf of Borror:

Q:   But what you're telling me is you did not come here today prepared to talk about the timing of their departure. Is that correct?

A:   I guess so.

Q:   Well, you say, "I have no knowledge" regarding their departure, right?

A:   Correct.

Q:   Okay. **Did you make an effort to go talk to anybody at Borror in order to find out the timing of their departures?**

A:   **No, I did not.**

Q:   **Did you realize that you have an obligation to do that as the designee for Borror?**

A:   **I did not.**

\*\*\*

Q:   But you said you don't know whether the litigation hold letter from Oro was ever received by Borror – I'm sorry – from Oro's counsel was ever received by Borror.

A:   **How would I know?**

Q:   Well, **you're supposed to ask other people if you don't know enough to answer the questions relating to this topic.** It says the receipt of the litigation hold letter and how and to what extent it was shared, discussed, and/or distributed. And I'm saying: You don't even know if it was received. Do you know whether that litigation hold letter was distributed within Borror?

A:   You know, I received this list Tuesday. 37 topics. **I did my best to prepare**.

\*\*\*

Q:   Matt, you are here as a designee to answer for Borror. I appreciate that you are answering as to your knowledge. That's part of Borror's knowledge. But it says all communications, not just the ones involving you. **So you needed to go to people within Borror and find out, whether it's Lori or Doug or whoever, Dani, I don't know. Somebody needs to be able to inform**

3

> you that, hey, was there anybody else that had communications related
> to this? What happened with this litigation hold letter?
>
> And it sounds to me like you did not do that. Is that correct?
>
> A:     **I did not speak to other people internally on this**, being I received it
> Tuesday.

(*Id.* at PAGEID ## 2647, 2661-2662 (emphasis added).)  At the end of the deposition, Oro's

counsel reserved the right to reconvene the deposition in light of Mr. Cook's testimony:

> MR. PALMER:  However, just for the record, I want to make it clear that I don't
> believe this deposition is over and we reserve the right to reconvene it as to these
> ESI issues and the topics that were in the deposition notice because it's our position
> that we did not have a designee who was able to and prepared to answer all of the
> questions relating to all of the topics.

(*Id.* at PAGEID # 2670.)

On January 19, 2021, the parties discussed Mr. Cook's deposition with the Court and the

Court ordered briefing on the matter.  (*See* ECF No. 120 at PAGEID ## 3229-3238.)  On

February 9, 2021, Oro filed the subject Motion for Sanctions.  (ECF No. 109.)  Generally, Oro

contends that Mr. Cook's deposition gave rise to the assessment of sanctions for three reasons:

(1) Borror failed to properly prepare Mr. Cook for the deposition; (2) Mr. Cook's testimony

revealed that Borror had failed to disclose various information relating to ESI discovery and

failed to fully supplement their disclosures, in contravention of the Court's Orders; and (3) Mr.

Cook's testimony revealed that Borror had failed to preserve evidence from electronic devices.

(*See generally id.* at PAGEID ## 2562-2591.)  Oro argues that it "need[s] to investigate these

spoliation issues further."  (*Id.* at PAGEID # 2590.)

Oro seeks the following relief:  (1) "an order regarding a second 30(b)(6) deposition

relating to the topics for which Cook lacked Borror's corporate knowledge, and for attorney's

fees and expenses to prepare for and conduct for the first and second 30(b)(6) deposition, plus a

$10,000 award as a deterrent"; (2) "monetary sanctions in the form of attorney's fees and costs

4

for all of the efforts Plaintiff undertook to discover this information that Borror had an obligation to previously disclose under the ESI Orders but failed to disclose, that Borror be required to image all of its Borror-owned devices because Borror's request for imaging sampling and Plaintiffs agreement to do imaging sampling was based on Borror's fallacies regarding tracking devices and whether its devices likely had discoverable ESI"; and (3) permission "to inquire more deeply into what efforts, if any, Borror and Defendants took to implement a litigation hold, including, but not limited to, any litigation hold communications or letters from counsel (even if they contain attorney-client and/or attorney work-produce communications)." (*Id.* at PAGEID ## 2558-2560.)

Borror responded to the Motion on March 1, 2021, generally arguing that Oro's complaints "about the potential spoliation of evidence [are] based on nothing more than rank speculation," and that "to grant even a portion of Plaintiffs' motion, this Court would have to believe (without any proof) that there *was* ESI . . . that was not otherwise captured in the *1.25 Million* documents that Borror [has] produced." (ECF No. 114 at PAGEID ## 2957-2958 (emphasis in original).)  Borror concedes that Mr. Cook "does not possess the best memory," but argues that "Mr. Cook's poor memory plus Plaintiffs' wild speculation does not equal sanctionable conduct." (*Id.*)

Oro filed a Reply brief on March 16, 2021.  (ECF No. 119.)  In the Reply, Oro generally restates its positions, and emphasizes that because it has made a preliminary showing of spoliation, it is "entitled to a further look into Borror's litigation hold efforts." (*Id.* at PAGEID ## 3017-3035.)  The matter is thus ripe and ready for judicial review.

## II.

Federal Rule of Civil Procedure 30(b)(6) allows a party to depose a representative of a corporate entity and provides, in relevant part:

> In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. * * * The persons designated must testify about information known or reasonably available to the organization.

Fed. R. Civ. P. 30(b)(6). Thus, "[a] 30(b)(6) witness testifies as a representative of the entity, his [or her] answers bind the entity and he [or she] is responsible for providing all the relevant information known or reasonably available to the entity." *Smith v. General Mills, Inc.*, No. C2 04–705, 2006 WL 7276959, at *5 (S.D. Ohio Apr. 13, 2006) (citations omitted). According to the Advisory Committee Notes to Rule 30(b)(6), the rule was meant to "curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it" and to reduce the number of depositions "by a party uncertain of who in the organization has knowledge." Fed. R. Civ. P. 30(b)(6) advisory committee's note to 1970 amendment.

"Obviously it is not literally possible to take the deposition of a corporation; instead, when a corporation is involved, the information sought must be obtained from natural persons who can speak for the corporation." 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure, § 2103, at 451 (3d ed. 2010). Thus, "the duty to prepare a 30(b)(6) witness extends not only to the matters within the designee's personal knowledge, but also to all matters reasonably known by the corporation." *Painter-Payne v. Vesta W. Bay, LLC*, No. 2:12-CV-00912, 2014 WL 1599505, at *3 (S.D. Ohio Apr. 21, 2014)

6

(citing *U.S., ex rel. Fry v. Health Alliance of Greater Cincinnati*, No 1:03-cv-167, 2009 WL 5227661, at *2 (S.D. Ohio Nov. 20, 2009)).  A party, therefore, has the responsibility under Rule 30(b)(6) to prepare its designee "to the extent matters are reasonably available, whether from documents, past employees, or other sources . . . ."  *Id.*  Specifically, the company is required "to make a good faith effort to find out the relevant facts possessed by the corporation – to collect information, review documents, and interview employees with personal knowledge just as a corporate party is expected to do in answering interrogatories."  *Clear Cast Grp., Inc. v. Ritrama, Inc.*, No. 1:09CV0169, 2011 WL 13334451, at *3 (N.D. Ohio Sept. 15, 2011) (internal quotation and citations omitted).

While "[a]bsolute perfection is not required of a 30(b)(6) witness," producing an unprepared Rule 30(b)(6) witness is tantamount to a failure to appear, which may warrant sanctions under Federal Rule of Civil Procedure 37(d).  *Wicker v. Lawless*, 278 F. Supp. 3d 989, 1000 (S.D. Ohio 2017) (citing *Lutz v. St. Paul Fire & Marine Ins. Co.*, Case No. 1:03–cv–750, 2005 U.S. Dist. LEXIS 12568, *7–8 (S.D. Ohio May 24, 2005) ("An improper Rule 30(b)(6) designation may amount to a failure to appear and warrant sanctions under Rule 37.")); *see also Little Hocking Water Ass'n, Inc. v. E.I. Du Pont de Nemours & Co.*, No. 2:09-CV-1081, 2013 WL 1196606, at *14 (S.D. Ohio Mar. 25, 2013) ("The production of an unprepared witness is tantamount to a failure to appear, and warrants the imposition of sanctions.").  Rule 37(d) "provides for a variety of sanctions for a party's failure to comply with its Rule 30(b)(6) obligations, ranging from the imposition of costs to preclusion of testimony and even entry of default."  *Wicker*, 278 F. Supp. 3d at 1000–1001 (citation omitted).  The party seeking sanctions must make at least an initial showing—with record citations—suggesting that the designee's preparation was inadequate.  *Id.*  Before imposing sanctions, courts should compare the

testimony elicited in the deposition to the topics noticed under Rule 30(b)(6) in order to determine the adequacy of the witness' preparation.  *Id.* (citation omitted).

Federal Rule of Civil Procedure 37(b)(2) sets forth a laundry list of sanctions that a court may impose when a party fails to comply with its discovery orders.  Fed. R. Civ. P. 37(b)(2).  Rule 37(b)(2)(A) provides as follows:

> If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.  They may include the following:
>
> (i)     directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii)   striking pleadings in whole or in part;
>
> (iv)    staying further proceedings until the order is obeyed;
>
> (v)     dismissing the action or proceeding in whole or in part;
>
> (vi)    rendering a default judgment against the disobedient party; or
>
> (vii)   treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii).

Under the provisions of Rule 37(b)(2)(C), "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).  Rule 37(c) adds that a court may order payment of the reasonable expenses, including attorney's fees, if a party fails to disclose certain information or fails to supplement an earlier response.  Fed. R. Civ. P. 37(c)(1).   In determining an appropriate sanction under Rule 37, "a court may properly consider both punishment and deterrence."  *JPMorgan Chase Bank,*

*N.A. v. Neovi, Inc.*, No. 2:06-cv-0095, 2007 WL 1989752, at *4 (S.D. Ohio July 9, 2007)

(citations omitted). "The burden of proof is on the sanctioned party to establish that its failure to

comply was due to inability and not to willfulness, bad faith, or any fault of the party." *Id.*

(internal quotation and citation omitted). Furthermore, "[f]ault, in this context, includes gross

negligence." *Id.* (citation omitted). A court has wide discretion in determining an appropriate

sanction under Rule 37. *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639,

643 (1976).

**III.**

Applying the foregoing authority, the Court now considers Oro's Motion for Sanctions.

(ECF No. 109.) As discussed, Oro seeks sanctions for: (1) Borror's alleged failure to prepare

Mr. Cook for his Rule 30(B)(6) deposition; (2) Borror's alleged failure to disclose certain

discoverable information; and (3) Borror's alleged failure to preserve evidence. (*Id.*) The Court

will address each in turn.

**1.      Failure to Prepare Rule 30(B)(6) Witness**

First, Oro argues that sanctions are appropriate because Mr. Cook was not prepared to

answer questions relating to Topic Nos. 4, 7-11, 16-23, and 36-37 from the Notice of Deposition.

(*See generally* ECF No. 109 at PAGEID ## 2562-2572.) In response, Borror offers little

explanation or defense, arguing that "[a]dmittedly, Borror's IT Manager Matt Cook does not

possess the best memory," but "Mr. Cook's poor memory plus Plaintiffs' wild speculation does

not equal sanctionable conduct." (ECF No. 114 at PAGEID # 2958.) Borror also suggests that

sanctions are inappropriate under Local Rule 37.1 because Oro did not contact Borror about its

9

concerns before alerting the Court on January 19, 2021.  (*Id.* at PAGEID ## 2967-2968.)[3]

Borror further argues that "Mr. Cook was prepared to testify concerning all topics to some

extent," and Borror seeks to emphasize the amount of information that Mr. Cook was able to

provide, rather than focusing on his "poor memory."  (*Id.* at PAGEID ## 2965-2970.)  Finally,

Borror argues that "[c]omparing Mr. Cook's testimony to the noticed topics, this Court can

clearly see that Mr. Cook was able to provide substantive information as to the requested topics,"

and Borror blames Oro for not further narrowing their topics for Mr. Cook's deposition.  (*Id.* at

PAGEID # 2970.)

The Court disagrees with Borror, and finds Oro's argument to be well taken.  While

Borror is correct that "Rule 30(b)(6) is not designed to be a memory contest," and that Courts do

not require "absolute perfection," the transcript from Mr. Cook's deposition clearly demonstrates

that Mr. Cook fell far short of these standards.  When it came to his preparation for the

deposition, for example, Mr. Cook testified that the ***only*** things he did to prepare included going

through his own emails "to refresh [his] knowledge," talking to counsel, and obtaining a police

report.  (ECF No. 109-2 at PAGEID ## 2602, 2616.)  Notably, Mr. Cook testified that he did not

talk to anybody else at Borror to obtain any information, other than his own, to prepare for the

deposition.  (*Id.* at PAGEID ## 2602-2604, 2616, 2625, 2634-2635, 2661-2662, 2666-2667,

2669.)  To that end, Mr. Cook repeatedly testified that he only received the Notice of Deposition

---

[3] The Court rejects this argument, as Oro's counsel stated at the end of Mr. Cook's deposition that they "[didn't] believe this deposition is over and we reserve the right to reconvene it as to these ESI issues and the topics that were in the deposition notice because it's our position that we did not have a designee who was able to and prepared to answer all of the questions relating to all of the topics."  (ECF No. 109-2 at PAGEID # 2670.)  The parties then discussed Oro's concerns with the Court during an informal telephone conference on January 19, 2021, as contemplated by Local Rule 37.1.  S.D. Ohio Civ. R. 37.1.  Regardless, the Court agrees with Oro that Local Rule 37.1 does not preclude the imposition of sanctions.  (ECF No. 119 at PAGEID ## 3017-3018.)

three business days prior to the deposition, and he "did [his] best to prepare for it" but "to go through all this in two days is a little difficult." (*Id.* at PAGEID ## 2661, 2662.)[4]

Thus, Mr. Cook's own testimony supports Oro's argument that Mr. Cook "failed to gather any memories but his own" in preparation for the deposition. (ECF No. 119 at PAGEID # 3022.) This falls far short of what was required of Mr. Cook, and by extension what was required of Borror, under Rule 30(b)(6). Under the Rule, Borror had an obligation to designate a deponent who could "testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6); *see also Painter-Payne*, 2014 WL 1599505, at *3 (quoting *Prosonic Corp. v. Stafford,* No. 2:07–cv–803, 2008 WL 2323528, at *1 (S.D. Ohio June 2, 2008) ("[A]n organization which is served with a Rule 30(b)(6) deposition notice is obligated to produce a witness knowledgeable about the subjects described in the notice and to prepare that witness to testify not just to his or her own knowledge, but the corporation's knowledge.")).

Borror repeatedly states that Mr. Cook was the "most knowledgeable" Borror employee to answer Oro's questions, and argues that it was enough for him to review his emails and "provide[] all [of] the information that he had" for certain topics. (ECF No. 114 at PAGEID ## 2959, 2966, 2969.) This is not enough. While it was undoubtedly helpful that Mr. Cook had the most personal knowledge of any Borror employee, it was not necessary for Mr. Cook to have *any* personal knowledge to have been adequately prepared to testify on behalf of Borror. Under Rule

---

[4] As an aside, the Court notes that during the January 19, 2021 Status Conference, Borror's counsel stated on the record that Mr. Cook testified "that he had spent upwards of six hours reviewing his emails and reviewing other documents, in addition to sending emails to individuals[,] [a]nd he mentioned that he had a meeting with counsel." (ECF No. 120 at PAGEID # 3235.) It does not appear to the Court that Mr. Cook testified that he spent six hours preparing for the deposition, but taking counsel's statement at face value the Court can calculate that taking six hours to prepare for the thirty-six Topics (not including Topic No. 6) would have allowed Mr. Cook an average of only ten minutes to prepare for each Topic.

30(b)(6), "there is no obligation to select a person with personal knowledge of the events in question, so long as the corporation proffers a person who can answer regarding information known or reasonably available *to the organization*." *Lloyd v. Midland Funding, LLC*, 639 F. App'x 301, 305 (6th Cir. 2016) (emphasis in original; internal quotations omitted) (citing 8A Charles Alan Wright et al., Federal Practice and Procedure § 2103 (3d ed. 2015); *Brazos River Auth. v. GE Ionics, Inc.,* 469 F.3d 416, 433 (5th Cir. 2006) (explaining that a Rule 30(b)(6) witness "does not give his personal opinions, but presents the corporation's 'position' on the topic"); *PPM Fin., Inc. v. Norandal USA, Inc.,* 392 F.3d 889, 895 (7th Cir. 2004) (holding that a Rule 30(b)(6) witness "was free to testify to matters outside his personal knowledge as long as they were within the corporate rubric")).

Having compared Mr. Cook's testimony to the noticed Topics, it is clear to the Court that Mr. Cook could not provide information known or readily available to Borror regarding several of the noticed Topics, and that Mr. Cook was not prepared to provide any insight but his own for any of the noticed Topics (except, arguably, for certain Topics which dealt with a stolen laptop). Throughout the deposition, Mr. Cook was candid about these facts, and, about five hours into the deposition, confirmed that he critically misunderstood his role as the Rule 30(b)(6) representative for Borror:

> Q.   So in the deposition notice Nos. 22 and 23, those topics. "Details concerning the facts and circumstances of Weaver's departure from Borror Construction and/or Borror Management." 23 is, "Details concerning the facts and circumstances of Rankey's departure from Borror Construction and/or Borror Management." And you wrote in your notes, "I have no knowledge of facts and circumstances of her departure," and then you said the same thing for Rankey. Correct?
>
> A.   Yes. I don't know when they left.
>
> Q.   Do you understand -- do you understand that -- and I will tell you just to be clear for the record I did offer to modify these and modify them to say, concerning the facts and circumstances of Weaver's departure regarding -- and Rankey's departure regarding the timing and their e-mail and their

12

devices. But what you're telling me is you did not come here today prepared to talk about the timing of their departure. Is that correct?

A.    I guess so.

Q.    Well, you say, "I have no knowledge" regarding their departure, right?

A.    Correct.

Q.    Okay. **Did you make an effort to go talk to anybody at Borror in order to find out the timing of their departures?**

A.    **No, I did not.**

Q.    **Did you realize that you have an obligation to do that as the designee for Borror?**

A.    **I did not.**

(ECF No. 109-2 at PAGEID # 2647 (emphasis added).)

The only conclusion this Court can draw from Mr. Cook's testimony is that he was fundamentally unprepared for his deposition.  While the Court recognizes that Mr. Cook was able to provide substantive answers for many of the deposition Topics, the Court concludes that Mr. Cook did so only because of his personal knowledge and efforts to review his own personal records – not because Borror, or Borror's counsel, helped him make a "good faith effort to find out the relevant facts possessed by the corporation – to collect information, review documents, and interview employees with personal knowledge just as a corporate party is expected to do in answering interrogatories." *Clear Cast Grp., Inc.*, 2011 WL 13334451, at *3 (citations omitted).

Having concluded that Mr. Cook was unprepared for his deposition, the Court must next determine how to remedy the situation.  To that end, Oro requests various sanctions:  (1) an Order that Borror must produce one or more Rule 30(b)(6) designees for a second deposition to cover Topic Nos. 7-11, 16-24, and 36-37; (2) an Order that Borror must pay Oro's costs and expenses for the first deposition; (3) an Order that Borror must pay Oro's costs and expenses for the second deposition, including preparation for the second deposition; (4) an Order that Borror must pay Oro's costs associated with the subject Motion for Sanctions; and (5) an Order that

Borror must pay Oro $10,000.00 "as a penalty to deter future discovery misconduct." (ECF No. 109 at PAGEID ## 2571-2572.)

Rule 37(d) controls this analysis. *Wicker*, 278 F. Supp. 3d at 1000 ("[P]roducing an unprepared Rule 30(b)(6) witness is tantamount to a failure to appear, which may warrant sanctions under Fed. R. Civ. P. 37(d).") (citing *Lutz*, 2005 U.S. Dist. LEXIS 12568, *7–8 ("An improper Rule 30(b)(6) designation may amount to a failure to appear and warrant sanctions under Rule 37.")). Under Rule 37(d), sanctions may include any of the following orders listed in Rule 37(b)(2)(A)(i)-(vi):

    (i)     directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

    (ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

    (iii)   striking pleadings in whole or in part;

    (iv)   staying further proceedings until the order is obeyed;

    (v)    dismissing the action or proceeding in whole or in part; [or]

    (vi)   rendering a default judgment against the disobedient party[.]

Fed. R. Civ. P. 37(d)(3). The Rule further provides that "[i]nstead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id.* Rule 37(d) therefore "mandate[s] the award of attorney's fees in most cases, regardless of what other sanctions are imposed." *Wicker*, 278 F. Supp. 3d at 999. "A court is vested with wide discretion in determining an appropriate sanction under Rule 37." *Little Hocking Water Assn., Inc.*, 94 F. Supp. 3d at 902.

14

With that in mind, the Court is not obliged to impose all of Oro's requested sanctions against Borror at this time.  Oro's first request, however, is well taken.  This Court previously has ordered second depositions under similar circumstances, and it will do so again here.  *See, e.g., Prosonic Corp.*, 2008 WL 2323528, at *5 ("The remedy in this situation is quite straightforward.").  While the Court believes that Mr. Cook was not adequately prepared as a corporate representative to discuss ***any*** of the noticed Topics beyond his personal knowledge, Oro evidently is satisfied with Mr. Cook's answers regarding Topic Nos. 1-5, 12-15, and 25-35.  The Court therefore will limit, as requested, the scope of the second Rule 30(b)(6) deposition to Topic Nos. 7-11, 16-24, and 36-37.[5]

As for Oro's requested monetary sanctions, the Court finds that Borror's failure to prepare Mr. Cook was not substantially justified.  The Court likewise does not find that the circumstances make an award of attorneys' fees unjust.  Accordingly, the Court concludes that Borror should pay the following:  (1) Oro's reasonable costs and expenses associated with attending the second deposition, including court reporter costs and the fees for Oro's ESI consultant to attend; (2) Oro's reasonable attorneys' fees associated with the subject Motion for Sanctions.  The Court will decline to impose additional monetary sanctions on Borror at this time, however, as the Court believes that the above sanctions adequately serve the purpose of Rule 37.  *Brown v. Tellermate Holdings Ltd.*, No. 2:11-CV-1122, 2014 WL 2987051, at *25 (S.D. Ohio July 1, 2014), *adopted as modified*, No. 2:11-CV-1122, 2015 WL 4742686 (S.D. Ohio Aug. 11, 2015) (holding that the "main purposes" of Rule 37 are "to prevent parties from

---

[5] The Court recognizes that Borror timely raised scope-related objections to Topic Nos. 4, 22, and 23, as well as "individual objections based on privilege" to Topic Nos. 7-11.  (*See* ECF No. 119-2.)  The Court also observes that Borror never raised any objections to Topic Nos. 16-21 or 36-37.  (*Id.*)

benefitting from their own misconduct, preserving the integrity of the judicial process, and deterring both the present litigants, and other litigants, from engaging in similar behavior.").

Accordingly, Oro's Motion for Sanctions is **GRANTED** as to Borror's alleged failure to prepare Mr. Cook for his Rule 30(b)(6) deposition. The Court **ORDERS** that Borror shall make available Mr. Cook, and/or some other corporate representative, for a **SECOND RULE 30(B)(6) DEPOSITION**, which shall occur within **THIRTY (30) DAYS** of this Opinion and Order. The second deposition shall cover Topic Nos. 7-11, 16-23, and 36-37. The Court **FURTHER ORDERS** Borror to pay: (1) Oro's reasonable costs and expenses associated with attending the second deposition, including court reporter costs and the fees for Oro's ESI consultant to attend; and (2) Oro's reasonable attorneys' fees associated with the subject Motion for Sanctions. The Court considers these to be the least severe sanctions that are likely to deter such conduct in the future. The Court **ADMONISHES** Borror that if its corporate representative is similarly unprepared for the second Rule 30(b)(6) deposition then the Court will impose more severe penalties, which may include additional monetary sanctions.

## 2. Failure to Disclose Certain Discoverable Information

Oro next argues that sanctions are appropriate because Borror failed to disclose three different types of discoverable information, in violation of the ESI Orders[6] entered in the related cases. (ECF No. 109 at PAGEID ## 2572-2580.) First, Oro argues that Borror "proffered conflicting disclosures regarding reassignment of electronic devices," and that Mr. Cook's deposition "revealed that Borror's excuse for its failure/refusal to image devices (i.e., that the devices were not tracked) was fallacious." (*Id.* at PAGEID ## 2573-2574.) Second, Oro argues

---

[6] On July 13, 2020, the Court entered substantially identical ESI Protocol Orders to govern ESI discovery in these cases. (*See* Purchase Agreement Case, ECF No. 47; Federal Construction Case, ECF No. 40.) The Court will collectively refer to these Orders as the "ESI Orders."

that "Borror failed to disclose devices likely to have discoverable ESI, contrary to its representation in its ESI Disclosures that the devices used by former employees 'will not have discoverable ESI,'" and that "[o]nly by way of the 30(b)(6) deposition were Plaintiffs able to determine that Borror's representations were inaccurate." (*Id.* at PAGEID ## 2574-2575.) Finally, Oro argues that Borror failed to disclose custodians in accordance with the ESI Orders, and that "only by way of the 30(b)(6) deposition were Plaintiffs able to learn that Borror had failed/refused to disclose four additional custodians with discoverable ESI." (*Id.* at PAGEID ## 2576-2577.) The Court will address each of these arguments in turn.

### A. Tracking of Electronic Devices

In its ESI Disclosures, Borror indicated that former employees' work devices "are not identifiable." (ECF No. 109-5 at PAGEID ## 2879, 2884.) Mr. Cook's deposition confirmed that this was false, however, as he has tracked employees' devices since approximately May 18, 2018. (*See* ECF No. 109-2 at PAGEID ## 2625-2626.) Oro argues that Borror intentionally concealed this information from Oro in bad faith, in an effort to avoid imaging such devices, and that "[o]nly by way of the 30(b)(6) deposition were Plaintiffs able to prove these representations[] to be demonstrably false." (ECF No. 109 at PAGEID # 2579.) In response, Borror maintains that Oro's "rush to judgment and conflation of multiple cases caused them to make inaccurate claims," and submits that "after discovering that Mr. Cook did track devices, counsel provided [Oro] with that information on November 18, 2020." (ECF No. 114 at PAGEID ## 2970-2971.) Simply put, Borror argues that "[u]pon discovering the error, Borror timely supplemented its disclosures" and "[n]othing sanctionable occurred." (*Id.*) In its Reply brief, Oro maintains that "[o]nly by way of Mr. Cook's testimony did [Oro] now learn that [Borror] <u>did</u> have a list of devices." (ECF No. 119 at PAGEID # 3023 (underline in original).)

17

The Court agrees with Borror that nothing sanctionable occurred with regard to this issue. While both parties rightly point to the extensive relevant correspondence, Oro appears to ignore Borror's November 18, 2020 letter which stated that "Borror has located former employees' devices" and included a chart of fourteen (14) such devices.  (*See* ECF No. 109-9 at PAGEID ## 2902-2903.)  This letter undermines Oro's position that it wasn't until Mr. Cook's deposition (in January 2021) that Oro learned that Borror had a list of former employees' devices.  While Borror did not affirmatively state or highlight the fact that Mr. Cook had been tracking such devices, the Court finds that Borror's November 18, 2020 letter should have been sufficient for Oro to connect the dots.

As for the delay in producing this information, the Court again finds that nothing sanctionable occurred.  After reviewing Borror's *in camera* exhibits, it is clear to the Court that Mr. Cook was appropriately involved with Borror's ESI Disclosures in July and August of 2020, and that there is no merit to Oro's theory that Borror's counsel knew "[a]ll along" that Borror could track devices of former employees.  (ECF No. 109 at PAGEID # 2579.)  While the Court appreciates Oro's concern regarding the inconsistencies between Borror's ESI Disclosures and Mr. Cook's deposition testimony, the Court agrees with Borror that Mr. Cook simply must have forgotten about his extensive involvement with the ESI Disclosures, and specifically about his own communications between July 2020 and November 2020.  That may be "hard to fathom" for Oro, but the Court assures Oro that Borror's *in camera* exhibits foreclose any other conclusion.[7]

Separately, the Court also agrees that "[c]ontrary to [Oro's] assertions, Borror, through its counsel, did 'ask the right people the right questions.'"  (ECF No. 114 at PAGEID # 2971.)

---

[7] This fact, however, only supports Oro's argument (and the Court's conclusion) that Mr. Cook was woefully unprepared for his deposition, as the Court expects that a properly prepared witness would not have struggled with such straightforward information, nerves or not.

Prior to submitting its ESI Disclosures, and then after receiving Oro's September 18, 2020 correspondence, Borror's counsel acted appropriately in trying to obtain this information from Mr. Cook, who was the right person to ask.  From July 2020 to November 2020, Borror's counsel remained diligent, not only in trying to confirm whether Borror tracked former employees' devices, but also in promptly notifying Oro after receiving such confirmation (especially so given that counsel contracted COVID-19 in November 2020).  Finally, on a separate note, the Court notes that Borror's *in camera* exhibits disprove Oro's cynical speculation that Borror's *modus operandi* from the beginning of discovery has been to avoid imaging former employees' devices.  Accordingly, there is no basis for sanctioning Borror on this issue.  Oro's Motion for Sanctions is accordingly **DENIED** as to this issue.

> **B.     Discoverable Information on Electronic Devices**

In its ESI Disclosures, Borror represented that its "employees are unable to open, review, edit, or save documents and other ESI to a work computer."  (ECF No. 109-5 at PAGEID ## 2879, 2884.)  Mr. Cook's deposition again confirmed, however, that this statement was false. (*See* ECF No. 109-2 at PAGEID ## 2604, 2627-2628, 2657-2658.)  Oro argues that Borror knew "[a]ll along . . . that its devices were likely to have discoverable ESI," but it again concealed this information to further avoid imaging devices.  (ECF No. 109 at PAGEID ## 2574-2575, 2579.) In response, Borror concedes that "Mr. Cook did testify regarding the likelihood that local devices would have discoverable ESI," but "maintains its position that those devices are unlikely to have discoverable ESI."  (ECF No. 114 at PAGEID ## 2966, 2971.)  Borror argues that Oro "offer[s] no evidence that discoverable ESI was actually stored only on the local computers and not on the network or that those documents were not shared with anyone affiliated with Borror or Oro."  (*Id.* at PAGEID # 2971.)  In its Reply brief, Oro maintains that "[t]he fact that [Borror]

affirmatively misrepresented that it was impossible to save records (when in reality it was not),
demonstrates that Borror's sole goal is to avoid the imaging of these devices."  (ECF No. 119 at
PAGEID # 3025.)

On this issue, the Court disagrees with Oro's rhetoric but agrees with Oro that Borror
should have disclosed that its employees could save documents and other ESI to work devices,
well prior to Mr. Cook's deposition.  Having reviewed the parties' correspondence, including
Borror's *in camera* exhibits, the Court cannot conclude that Borror's counsel was diligent in
pursuing this information.  Especially after Oro told Borror, on September 18, 2020, that "[w]e
have been informed" that Borror employees could save documents to a Borror device without
saving it to the network, Borror's counsel should have done much more to determine the truth.
(ECF No. 109-6 at PAGEID # 2889.)  Instead, however, Borror's counsel simply responded on
October 13, 2020, that "it is my understanding that Borror-owned devices do not have the ability
to download or save directly to their hard drives," and that "[i]t appears that you have
information that is different from what I have, so I will discuss this matter with Borror's IT
personnel."  (ECF No. 109-7 at PAGEID # 2894.)  This was not enough.

While the Court does not blame Borror's counsel for relying on Mr. Cook's verification
of Borror's ESI Disclosures on August 11, 2020, the correspondence provided demonstrates that
Borror's counsel did the bare minimum to discover the facts in response to Oro's September 18,
2020 letter.  First, Borror's counsel waited nearly a month before telling Oro they would look
into it on October 13, 2020.  (ECF No. 109-7.)  Then, after responding to Oro, Borror's counsel
reached out to discuss the matter with Mr. Cook on October 14, 2020, but apparently did not get
a reply.  (Borror's *In Camera* Exhibit E.)  On November 6, 2020, Oro responded to Borror's
October 13, 2020 letter and again stated that Borror's statement "conflicts directly with

20

information we have from former employees who worked at Borror during the relevant time periods." (ECF No. 109-8.) Then, only fifteen minutes after Oro sent its November 6, 2020 letter, Borror's counsel again reached out to Mr. Cook, having never gotten an answer in response to their October 14, 2020 email. (Borror's *In Camera* Exhibit E.) According to the correspondence provided to the Court, Borror's counsel never received an answer, and evidently stopped asking for the information altogether after November 6, 2020.[8] (*Id.*)

When pieced together in chronological order, the trail of correspondence on this issue shows that Borror's counsel failed to meet their obligations under the ESI Orders. As this Court previously has noted on multiple occasions, counsel must be diligent both "to ensure that all representations made to opposing parties and to the Court are truthful and are based upon a reasonable investigation of the facts," and "to ensure that their client's employees are acting competently, diligently and ethically in order to fulfill their responsibility to the Court":

> Over the past decade, much discussion has been devoted to the topic of how the prevalence of electronically stored information (ESI) either has impacted, or should impact, discovery in civil actions filed in state and federal courts. While the preservation, review, and production of ESI often involves procedures and techniques which do not have direct parallels to discovery involving paper documents, the underlying principles governing discovery do not change just because ESI is involved. **Counsel still have a duty (perhaps even a heightened duty) to cooperate in the discovery process; to be transparent about what information exists, how it is maintained, and whether and how it can be retrieved; and, above all, to exercise sufficient diligence (even when venturing into unfamiliar territory like ESI) to ensure that all representations made to opposing parties and to the Court are truthful and are based upon a reasonable investigation of the facts. As another Judge of this Court has**

---

[8] It is possible that Borror's counsel received an answer by separate correspondence or in a real-time or offline conversation, but such information was not provided to the Court. This leads the Court to conclude that either Borror's counsel learned this information for the first time at Mr. Cook's deposition on January 15, 2021 – almost four months after Oro's September 18, 2020 letter and more than three months after Borror's counsel asked Mr. Cook the same question – or Borror's counsel learned this information prior to Mr. Cook's deposition, but declined to notify Oro. The Court will not speculate as to which is more likely, but both scenarios reflect poorly on Borror's counsel.

> observed, **"trial counsel must exercise some degree of oversight to ensure that their client's employees are acting competently, diligently and ethically in order to fulfill their responsibility to the Court,"** *Bratka v. Anheuser–Busch Co.,* 164 F.R.D. 448, 461 (S.D.Ohio 1995) (Graham, J.). That holds true whether the bulk of the information relevant to discovery is ESI or resides in paper documents.

*Brown*, 2014 WL 2987051, at *2 (emphasis added). While Borror's counsel upheld this standard as it related to tracking Borror's electronic devices, they did not do so with regard to determining whether Borror's employees could store discoverable ESI on their devices.

For this reason, Oro's Motion for Sanctions is **GRANTED** as to this issue. The Court declines, however, to require Borror "to immediately image all devices in Borror's possession, custody, or control that were used during [] the relevant time period by current or former employees who performed services relating to the project," as Oro requests. (ECF No. 109 at PAGEID # 2580.) Rather, the Court **ORDERS** Borror to pay Oro's attorneys' fees associated with the subject Motion for Sanctions, which should appropriately punish Borror's actions to date, deter future sanctionable conduct, and compensate Oro for the unnecessary time, money, and energy it spent trying to confirm a fact of which it was aware for months before Mr. Cook's deposition. *See Taylor v. Hart*, No. C-1-02-446, 2007 WL 869721, at *1 (S.D. Ohio Mar. 20, 2007) ("The purpose of imposing sanctions is to 'assure both future compliance with the discovery rules and to punish past discovery failures, as well as to compensate a party for expenses incurred due to another party's failure to properly allow discovery.'") (quoting *Bell v. Automobile Club of Michigan,* 80 F.R.D. 228, 229 (E.D. Mich. 1978), *cert. denied,* 442 U.S. 918 (1979)).

### C. Custodians

In its ESI Disclosures, Borror indicates that the ESI Orders "lists 14 individuals from whom [Borror] is to collect ESI," and "[t]here are no additional custodians who are likely to have discoverable ESI in their possession, custody, or control." (ECF No. 109-5 at PAGEID ##

2878, 2883.)  During his deposition, however, Mr. Cook testified that on July 23, 2019, he was asked to preserve files from additional Borror employees, who were not named in Borror's ESI Disclosures, "for litigation purposes."  (ECF No. 109-2 at PAGEID 2623-2625.)  Oro argues that this testimony shows that "[c]ontrary to Borror's counsel's representations to [Oro] that Borror knew of no other custodians that were likely to have discoverable ESI, Borror saved emails for at least four additional custodians precisely because they expected their email accounts to contain ESI relevant to the instant litigation."  (ECF No. 109 at PAGEID # 2577.)[9]

In response, Borror concedes that it "preserve[d] accounts for other individuals" not listed in its ESI Disclosures, but argues that "these individuals were involved in varying degrees with property management agreements between the parties, which are subject to separate litigation and not included in the ESI Orders."  (ECF No. 114 at PAGEID # 2963.)  Borror further argues that one of the additional individuals, Zach Hale, was merely a summer intern, so "[i]t would be highly unlikely that Mr. Hale (who was not remembered by management) would be among the individuals 'most likely to have Discoverable ESI.'"  (*Id.* at PAGEID # 2972.)  In its Reply brief, Oro emphasizes that Borror "acknowledge[s] that it failed to disclose these additional people, but erroneously claims that they are not custodians anyway," and rejects Borror's argument that the four undisclosed individuals do not relate to this case.  (ECF No. 119 at PAGEID # 3025.)

The obligation for the parties to disclose the identities of their custodians comes from Section III.A.1 of the ESI Orders, which provides in relevant part:

_____

[9] The four additional individuals at issue are Bethany Kungle, Matt Cook, Dalia Kalgreen, and Zach Hale.  (*See* ECF No. 109 at PAGEID # 2576.)

23

> **The Parties shall disclose to each other all Custodians[10] that are most likely to have Discoverable ESI** in their possession, custody, or control; this includes, but is not limited to, any persons currently or formerly employed by any of the Parties, as it is possible that a Party has devices with Discoverable ESI that were used by a former employee who is no longer employed by that Party.

(ECF No. 40 at PAGEID ## 443 (emphasis added).)  Accordingly, Borror is correct that it only needed to disclose those custodians who "are ***most likely*** to have Discoverable ESI" in their possession, custody, or control.  (ECF No. 114 at PAGEID # 2972 (emphasis added).)  On the other side, Oro has been consistently incorrect that Borror needed to disclose "all potential custodians."  (*See* ECF No. 109-6 (September 18, 2020 correspondence); ECF No. 109-8 (November 6, 2020 correspondence).)

Here, the Court is satisfied that Borror disclosed all custodians who are "most likely to have Discoverable ESI," and it is not concerned by the fact that Borror admittedly did not disclose all potential custodians.  Specifically, as to Ms. Kungle, Mr. Cook, and Ms. Kalgreen, Borror affirms that those individuals "were involved to varying degrees with the property management agreements" and therefore "were not involved with either of the cases subject to the ESI Order[s]."  (ECF No. 114 at PAGEID # 2963.)  Oro responds that Borror identified Borror Properties Management, LLC as an additional custodian that would have information relating to the Purchase Agreement Case, implicitly arguing that such disclosure should implicate Ms. Kungle, Mr. Cook, and Ms. Kalgreen as custodians.  But, this argument is not well taken.  (ECF No. 119 at PAGEID # 3025.)  By Oro's logic, Borror's disclosure would have exposed each of Borror Properties Management, LLC's employees as individuals who are "most likely to have Discoverable ESI."  The Court will not make such a sweeping conclusion.  As for Mr. Hale, the

---

[10] Under Section I.C. of the ESI Orders, "Custodian" is defined to mean "an individual who may have, had, or has possession, custody, or control of Discoverable ESI and/or Documents."  (ECF No. 40 at PAGEID # 439.)

Court is satisfied that a former summer intern would not be an individual who is "most likely to have Discoverable ESI."[11]  Accordingly, there is no basis for sanctioning Borror on this issue. Oro's Motion for Sanctions is, therefore, **DENIED** as to this issue.

**3.      Failure to Preserve Evidence**

Finally, Oro argues that Borror deleted documents, destroyed and/or lost hard drives, and deleted (or failed to stop the deletion of) emails, even after Oro issued a litigation hold letter and commenced litigation against Borror.  (ECF No. 109 at PAGEID # 2560.)  Oro believes that it has "just begun to discover information related to spoliation," and requests that the Court allow it "to inquire more deeply into what efforts, if any, Borror and Defendants took to implement a litigation hold, including, but not limited to, any litigation hold communications or letters from counsel (even if they contain attorney-client and/or attorney work-produce communications)." (*Id.*)  In response, Borror characterizes Oro's concern as "nothing more than rank speculation," and argues that Oro has failed to meet its burden of proof because "[t]hey have failed to show the following:  (1) an obligation to preserve information when some of the supposed evidence was lost, (2) that Borror destroyed evidence with a culpable state of mind, (3) that Borror actually lost evidence or that the supposed evidence was relevant to the cases, (4) that Borror intended to deprive Plaintiffs of the supposed evidence, and (5) that they have suffered any prejudice from the supposed lost evidence."  (ECF No. 114 at PAGEID ## 2957, 2967.)  In reply, Oro insists it has made a preliminary showing of spoliation, so it is "entitled to a further look into Borror's litigation hold efforts."  (ECF No. 119 at PAGEID # 3026.)

While the Court appreciates the gravity of Oro's concern, the Court concludes it is premature to address this issue before Borror's second Rule 30(b)(6) deposition.  As discussed,

---

[11] Borror's *in camera* exhibits support the Court's conclusion.

the second Rule 30(b)(6) deposition will cover Topic Nos. 7-11, all of which relate to Borror's litigation hold efforts.  Accordingly, Oro will be able to use the second deposition to further investigate its suspicion of spoliation, and Borror will have the chance to properly prepare its witness to alleviate Oro's concerns.  Given Mr. Cook's initial memory failings as to his involvement with Borror's ESI Disclosures, which the Court attributes in large part (at least for the time being) to Mr. Cook being inadequately prepared for the deposition, the Court is not yet inclined to accept Mr. Cook's original uncertainty about whether Borror properly distributed a litigation hold letter.  While the Court recognizes that the second Rule 30(b)(6) deposition may not resolve Oro's questions (and may in fact only raise more doubts), it believes that this fact-specific inquiry, if indeed necessary, will benefit from having as much information as possible. Accordingly, Oro's Motion for Sanctions is **DENIED WITHOUT PREJUDICE** as to this issue.

## IV.

For the foregoing reasons, Plaintiffs' Motion for Sanctions for Defendants' Failure to Prepare Witness for 30(b)(6) Deposition, Failure to Disclose Discoverable Information, and Failure to Preserve Evidence (Purchase Agreement Case, ECF No. 78; Federal Construction Case, ECF No. 109) is **GRANTED IN PART AND DENIED IN PART**.  Specifically, the Court rules as follows:

- The Motion for Sanctions is **GRANTED** as to Borror's failure to prepare Mr. Cook for Borror's Rule 30(b)(6) deposition.

- The Motion for Sanctions is **DENIED** as to Borror's failure to disclose whether it tracked former employees' devices.

- The Motion for Sanctions is **GRANTED** as to Borror's failure to disclose that employees' devices could contain discoverable information.

- The Motion for Sanctions is **DENIED** as to Borror's failure to disclose Ms. Kungle, Mr. Cook, Ms. Kalgreen, and Mr. Hale as custodians.

- The Motion for Sanctions is **DENIED WITHOUT PREJUDICE** as to Borror's alleged failure to preserve evidence.

Under these circumstances, the Court finds that the following sanctions are appropriate:

- The Court **ORDERS** that Borror shall make available Mr. Cook, and/or some other corporate representative, for a **SECOND RULE 30(B)(6) DEPOSITION**, which shall occur within **THIRTY (30) DAYS** of this Opinion and Order.  The second deposition shall cover Topic Nos. 7-11, 16-23, and 36-37 from the Notice of Deposition, ECF No. 109-1 at PAGEID ## 2596-2599.

- The Court **FURTHER ORDERS** Borror to pay:  (1) Oro's reasonable costs and expenses associated with attending the second deposition, including court reporter costs and the fees for Oro's ESI consultant to attend; and (2) Oro's reasonable attorneys' fees associated with the subject Motion for Sanctions.

The Court considers these to be the least severe sanctions that are likely to deter such sanctionable conduct in the future.  Borror is, however, **ADMONISHED** that if its corporate representative is similarly unprepared for the second deposition then the Court will impose more severe penalties, which may include additional monetary sanctions.

**IT IS SO ORDERED**.


Date: June 10, 2021                    /s/ *Elizabeth A. Preston Deavers*
                                       **ELIZABETH A. PRESTON DEAVERS**
                                       **UNITED STATES MAGISTRATE JUDGE**